E. W. Spangler, Jere Carl, M. L. Van Baman, George O. Luttman, citizens and taxpayers of York County, who file this bill on their own behalf, as such, and on behalf of such citizens and taxpayers of the said county as may become parties hereto, *v.* Jacob Leitheiser, William Cuningham, Alowese Gruver, Commissioners of the County of York, and Edward Gallagher, Appellant.

*Municipalities—Counties—Soldiers' monument—County building—Acts of May 22, 1895 and April 19, 1895.*

A soldiers' monument authorized to be erected by county commissioners under the Act of May 22, 1895, P. L. 97, is not a " county building " within the meaning of the Act of April 19, 1895, P. L. 38, requiring county commissioners, in the erection of " a court house, jail, or other county building," to let the work to the lowest and best bidder : Society of the Cincinnati's Appeal, 154 Pa. 621, followed.

*Constitutional law—Municipal indebtedness—Soldiers' monument.*

It is error for a court to enjoin the erection of a soldiers' monument on the ground that the contract is in violation of sections 8 and 10 of article IX. of the constitution where it appears that the debt, both gross and net, of the county, with the contract price of the monument added, is far below two per centum of the assessed valuation of property taxable for county purposes, and that the taxes levied by the commissioners for the year, together with the cash on hand and amounts due, are very largely in excess of the county's liability, including the contract price of the monument.

*Equity—Injunction—Fraud—Evidence—Municipal contract.*

Mere proof of suspicious circumstances, without positive evidence of fraud, is not sufficient to justify an injunction against the awarding of a municipal contract.

Argued May 20, 1897. Appeal, No. 45, Jan. T., 1897, by Edward Gallagher one of the defendants, from decree of C. P. York Co., Jan. T., 1897, No. 2, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Bill in equity to restrain the awarding of a contract for the erection of a soldiers' monument. Before BITTENGER, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* among others was in continuing the preliminary injunction.

*J. S. Black* and *B. F. Fisher*, with them *J. W. Heller*, for appellant.—When public officials have authority to act, the court will not by an injunction control them in the exercise of their discretion as to the necessity of the act or the mode of doing it: Beach on Modern Equity Jurisprudence, sec. 673; Warfel v. Cochran, 34 Pa. 381; Erie v. Reed's Exrs., 113 Pa. 468; Clinton School District's App., 56 Pa. 315.

A monument is not a county building: Church v. Allison, 10 Pa. 413; 2 Am. & Eng. Ency. of Law, 601; Bouvier's Law Dictionary.

There was no violation of the constitutional provision relating to municipal indebtedness: Linn v. Chambersburg Borough, 160 Pa. 511; Rainsburg Boro. v. Fyan, 127 Pa. 77; Wade v. Oakmont, Boro., 165 Pa. 479; Reuting v. Titusville, 175 Pa. 512.

*Henry C. Niles*, with him *James W. Latimer*, for appellee, cited on the question of increase of municipal indebtedness: Appeal of the City of Erie, 91 Pa. 398; Brown v. City of Corry, 175 Pa. 528; on the question of fraud: City of Chester v. Barber, 97 Pa. 455; Lancaster County v. Fulton, 128 Pa. 48.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 15, 1897:

This taxpayer's bill was brought to restrain the execution of a contract between appellant and the county commissioners for the erection of a monument under the Act of May 22, 1895, P. L. 96, which provides, "that upon the petition of at least fifty citizens to the court of quarter sessions of any county . . . . for the erection or completion of a monument in memory of the soldiers and sailors of the late war, it shall be the duty of said court to lay the petition before the grand jury, and, if approved by two successive grand juries and said court, the county commissioners shall be authorized to erect, or complete any monument now partly erected but not completed, and maintain at the county seat a suitable monument in memory of the soldiers and sailors of the late war of the rebellion from said county."

All the conditions precedent to official action of the county commissioners, such as presentation of the petition, approval thereof by two successive grand juries and the court, etc., were fully complied with before the contract was made. For reasons which sufficiently appear in the opinion of the learned president of the court below a preliminary injunction was granted, and by subsequent decree continued until final hearing. From that decree this appeal was taken by one of the defendants, Edward Gallagher, whose contention is that no sufficient ground for such injunction was shown.

One of the reasons assigned by the court below in support of its decree is that the contract in question is invalid for want of compliance with the Act of April 19, 1895, P. L. 38, requiring county commissioners in the erection of "a court house, jail or other county building," to let the work to the lowest and best bidder. This conclusion was made possible only by the learned judge's assumption that the proposed monument is or will be a "county building" within the act. In that he was clearly mistaken. The provisions of the act have no application to structures such as that under consideration. In the Society of the Cincinnati's Appeal, 154 Pa. 621, the meaning of the word "building," in a clause of the act of March 11, 1816, prohibiting the erection "of any sort of buildings" on part of Independence Square, was considered by this Court, and in an opinion by our Brother MITCHELL it was held that the Washington Monument, finally located in Fairmount Park, and recently dedicated with imposing ceremonies, was not a building within the meaning of said prohibitory clause. It was there said, "the proposed monument is not a building within the prohibited condition. A monument may take the shape of a Memorial Hall or other building, but that is not the general use of the word, and will not be presumed. A statue on a pedestal, even though the latter be large, is not a building in the proper meaning of the term." This construction of the word "building" is not only reasonable but in full accord with the general understanding; and, in the absence of a clearly defined intention to the contrary, it should be given controlling effect in the interpretation of the legislative will. No such contrary intent is apparent here and we, therefore, think the court below erred in holding that the act of April 19, 1895, has any application to the facts of this case.

Another reason given by the learned judge of the common pleas is that the contract was made in violation of sections 8 and 10 of article IX. of the constitution and of the law regulating the mode of increasing municipal indebtedness. We find nothing in the record that warrants any such conclusion as this. The undisputed evidence shows that the total aggregate valuation of property taxable for county purposes for the years 1896 and 1897 was $42,865,430. On December 21, 1896, when the contract was signed, there was in the county treasury, approximately, $12,000 cash, $30,000 due from the state treasurer and $13,000 overdue taxes. As against this there were outstanding bonds $76,000, a bridge contract balance about $40,000, and for office furnishings $3,000. The contract price of the monument was $23,550. These items in the aggregate are very much less than the percentum authorized by the constitution. Two per centum on the assessed valuation would be $857,308.62. The evidence further shows that the annual revenues of the county from assessments made for county purposes, together with the sum received annually from the state treasurer as the county's proportion of taxes collected, etc., would aggregate at least $200,000 for the year 1897. The taxes levied by the commissioners for that year, together with the cash on hand and amounts due, were very largely in excess of the county's liabilities, including the contract price of the monument. The only conclusion that can be fairly drawn from the evidence before us is that the contract in question does not in any manner come in conflict with the constitutional provisions, above referred to, or those of the act of 1874 : Reuting v. Titusville, 175 Pa. 512; Wade v. Oakmont Boro., 165 Pa. 479; Appeal of the City of Erie, 91 Pa. 398.

Further elaboration of the questions suggested by the court below is neither necessary nor desirable. It is sufficient to say that the case as presented to us discloses no sufficient ground either for granting or continuing the injunction. It is virtually admitted by the court below that the allegations of fraud were not proved. It is scarcely necessary to say that proof of suspicious circumstances,—if any there be,—is not enough.

The decree continuing the injunction is reversed and set aside and the preliminary injunction is dissolved ; and it is ordered, adjudged and decreed that the costs including the costs of this appeal be paid by the plaintiffs.