## Ryan, Appellant, *v.* Bruhin.

*Tax sales—Seated land—Act of June 1, 1915, P. L. 660—Title of purchaser—Proof of regularity—Act of April 3, 1804, P. L. 517, 4 Sm. L. 201 amendments.*

A purchaser, at a County Treasurer's sale, of seated land which had been sold for taxes pursuant to the Act of June 1, 1915, P. L.

660, acquires a valid title when he shows a tax lawfully levied and assessed on the property by the proper officers, a return by the Collector in strict compliance with the Act, that such tax was unpaid, and that sufficient personal property could not be found on the premises to pay such tax, the non-payment of such tax for two years after its assessment, a regularly conducted sale by the County Treasurer, and no redemption within two years thereafter.

Such sales are to be conducted in the same manner and with like effect as sales of unseated lands which are governed by the Act of April 3, 1804, P. L. 517, 4 Sm. L. 201, and its supplements and amendments.

A sale under the Act of 1915, passes a good title, notwithstanding alleged irregularities in the assessment or process, and after two years all the purchaser need show is that a tax was assessed and a sale made.

It is no valid objection to such sale that there was no warrant from the County Commissioners to the County Treasurer directing the sale; that there was insufficient proof of advertising; or that a number of lots in a tract were sold as a whole.

An assessment of taxes is not invalidated because it describes the tract by lot numbers, nor is a return of unpaid taxes ineffectual because no record of the return was kept in the Commissioners' Office prior to its delivery to the County Treasurer.

A return complies with the requirements of the Act of 1915 when it avers, under oath of the Collector, that after proper effort made no personal property could be found on the premises sufficient to pay the taxes.

Argued November 16, 1925.    Appeal No. 57, October T., 1925, by plaintiff, from judgment of C. P. Delaware County, March T., 1923, No. 935, in the case of Thomas L. Ryan v. Casper Bruhin.    Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Action of ejectment.    Before QUIGLEY, J. 49th Judicial District, Specially Presiding.

The facts are stated in the opinion of the Superior Court.

*Error assigned,* among others, was the order of the Court.

*John E. McDonough,* for appellant.

*Morton Z. Paul,* for appellee.

OPINION BY KELLER, J., April 19, 1926:

The Act of June 1, 1915, P. L. 660, provides that "return of taxes assessed by the authorities of any county, school district, poor district, borough, incorporated town, or township, against seated lands, shall be made whenever personal property cannot be found thereon sufficient to pay such taxes, to the Commissioners of the county, on or before the first day of February succeeding the date when the taxes were assessed. Whenever any such taxes are not paid within two years after the date of the assessment, such seated lands shall be advertised and sold by the county treasurer, at the time and in the manner, and with the same conditions and effect, as unseated lands."

Tax sales of unseated lands are governed by the Act of April 3, 1804, P. L. 517, 4 Sm. Laws 201, as supplemented or amended by the Acts of April 4, 1809, P. L. 192, 5 Sm. Laws 73; March 13, 1815, P. L. 177, 6 Sm. Laws 299; and March 9, 1847, P. L. 278. So much of the Act of 1804 as is not altered or supplied by subsequent legislation is yet in force: McCall v. Himebaugh, 4 W. & S. 164; and the system thus established was not repealed by the Act of June 4, 1901, P. L. 364; Long v. Phillips, 241 Pa. 246; Ellis v. Houseknecht, 57 Pa. Superior Ct. 55.

From these statutes we find the following relevant provisions in force relative to the advertisement and sale of unseated lands for taxes, the time and manner of holding them, and their condition and effect: Public sales of unseated lands for taxes due and unpaid for a year after they have been assessed, shall be held by the county treasurer,[1] on the second Monday in June of every even-numbered year, after sixty days notice of the time and place of such sales,[2] in at least two newspapers published in the county in which the

---

[1] Act of April 4, 1809; Act of March 13, 1815, sec. 1.
[2] Act of March 13, 1815, sec. 1.

lands lie;[3] but the neglect of such treasurer to cause
said publications to be made shall not in any case in-
validate any sale made in pursuance of the statute.[2]
The county treasurer shall make and execute deed or
deeds in fee simple to the purchaser or purchasers and
acknowledge the same in open court, which shall be
valid and effectual to all intents and purposes to vest
in the purchaser all the estate and interest of the real
owner, although not taxed or sold in his name;[4] and no
alleged irregularity in the assessment, or in the pro-
cess, or otherwise shall be construed or taken to affect
the title of the purchaser, but the same shall be de-
clared to be good and legal.[5] The Act of June 11, 1879,
P. L. 151, referred to by appellant in connection with
the advertisement of such sales, is limited in its scope
to the peculiar conditions set forth in section one
thereof.

Considering the Act of June 1, 1915, supra, in the
light of these provisions we are of opinion that the
defendant proved title under a valid tax sale of the
premises in suit and that the court below committed
no error in directing a verdict in his favor, or in dis-
charging plaintiff's rule for judgment non obstante
veredicto.

The evidence in the case disclosed the following:
On September 14, 1915, the Commissioners of Delaware
County issued their precept to Benjamin B. Glover,
assessor of Collingdale Borough directing all property
in said Borough to be assessed for the year 1916. This
order was carried out and return made, valuing and
assessing lots 8, 10, 12, 14, 16, 18, 20, 22 and 24 Lafay-
ette Avenue, in said Borough, in the name of Ellen
Boyle, owner, at $1,300. Upon this the proper authori-
ties duly laid and assessed taxes, to wit, County tax,

---

[3] Provided there are two newspapers published in said county; otherwise, in one newspaper in or nearest the same: Act of March 9, 1847. By the amendment of March 26, 1925, P. L. 82, this notice is now directed to be published once a week for three consecutive weeks.

[4] Act of April 3, 1804, secs. 2 and 5.

[5] Act of March 13, 1815, sec. 4.

$3.78, poor tax, $1.30, and fixed February 9, 1916, as the date for hearing appeals from said assessment of taxes. The tax duplicate and warrant were duly given to the collector of taxes of the Borough, who on January 15, 1917, made return to the County Commissioners that the county, poor, school and borough taxes, (itemizing them), assessed for the year 1916 against the above described lots, in the name of Ellen Boyle, were unpaid and that by a proper effort at the proper time he could not find sufficient personal property thereon of which such taxes could be collected. It further appeared that the said lots constituted one tract and were unoccupied, and that Ellen Boyle in whose name they were assessed was not a resident of the County. Following this, on the second Monday in June, 1918, (June 10, 1918), the county treasurer after sixty days notice in two newspapers published in said County, (see infra), sold the said tract of land at public sale to J. L. Rankin, solicitor of Collingdale Borough, and after two years had elapsed without redemption by the owner (Act of March 13, 1815, supra, sec. 4), delivered him a deed for the same; and that Rankin on December 31, 1920 executed and delivered a deed for the said tract to the Borough, which in due course sold and conveyed two lots thereof (each twenty-five feet in front) to the defendant.

Appellant has raised numerous objections to the validity of the proceedings.

(1) We find no irregularity in the assessment of the taxes. The listing of properties and appraisement of their values (See Voltz v. County of Erie, 81 Pa. Superior Ct. 467, 474), was made in 1915 by the assessor whose term expired the first Monday of January, 1916. Any duties thereafter to be performed by the assessor in 1916 necessarily had to be done by his successor in office: Voltz v. County of Erie, supra, p. 473. On this appraisement or valuation taxes were levied and assessed by the proper officers: Wells v. Smyth, 55 Pa.

159. The premises were sufficiently described in the assessment. They formed one tract of land and had been conveyed to Ellen Boyle as such. The assessment was not invalidated because it described the tract by the lot numbers used to designate them in her deed.

(2) The return of unpaid taxes was duly made by the collector and produced on the trial. The fact that no record of it was apparently kept in the commissioners' office prior to its delivery to the county treasurer did not render it invalid or ineffectual.

(3) The return complied with the requirements of the Act of 1915. It averred, under oath of the collector, that after proper effort made no personal property could be found on the premises sufficient to pay the taxes. The return was prima facie evidence of this essential fact: Stark v. Shupp, 112 Pa. 395, 399. It was not disputed or shown to be false as in Simpson v. Meyers, 197 Pa. 522. The owner was a non-resident and there was no tenant or occupier upon whom personal demand could be made.

(4) The Act of June 1, 1915, supra, does not require a warrant from the county commissioners to the county treasurer, directing a sale of the land. Even as to unseated lands such a warrant is not necessary since the Act of March 13, 1815, supra: McCoy v. Turk, 1 P. & W. 499. See also Ellis v. Houseknecht, supra, pp. 56, 59.

(5) The Deputy County Treasurer testified that sixty days notice of the sale was published in the Delaware County Times and the Chester Times, and by posters. The former newspaper had been sold and its file could not be produced. The advertisement was shown to have appeared in the Chester Times for April 11, April 18, May 2 and May 16, 1918. This constituted sixty days notice: Act of June 20, 1883, P. L. 136; Justice v. Meeker, 30 Pa. Superior Ct. 207; Alexander's Petition, 280 Pa. 209. Any failure of formal proof as to the dates of publication in the Del-

aware County Times was cured by the express provision of the Act of March 13, 1815 referred to above: McCall v. Himebaugh, 4 W. & S. 164, 167; the Act of June 1, 1915 expressly providing that the land should be advertised and sold at the time and in the manner and with the same *condition and effect* as unseated lands.

(6)    The sale was not invalidated because the whole tract was sold.    The Act of 1915 makes no other provision.    There was no suggestion of fraud or oppression present; and as pointed out by the court below, if each lot had been separately assessed, as appellant contended should have been done, one lot could not have been sold to pay the taxes due on the others. Each lot would have been liable for its own taxes.    The Act of March 13, 1815 (sec. 4) is explicit in providing that "no alleged irregularity in the assessment, or in the process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal."    In passing upon this clause the Supreme Court has given it full effect. See Peters v. Heasley, 10 Watts 208; Townsen v. Wilson, 9 Pa. 270, 271; Lee v. Jeddo Coal Co., 84 Pa. 74, 79; Coxe v. Deringer, 78 Pa. 271.    In the first cited case they said, speaking through HUSTON, J., "After a series of decisions on the construction and effect of the Act of 13th March, 1815, from 13 S. & R. etc. to this time, we are asked in this case to reconsider them all, to go back to the earliest decisions, and decide that unless the purchaser can show at the trial that every direction and requisite of the law has been punctually complied with, the purchaser has no title.    The Act of 1815 was framed expressly to dispense with such proof, and it has been so repeatedly decided, that after two years allowed by the act within which an owner might redeem, all proof of any more than that a tax was assessed and a sale made was unnecessary, that we had a right to suppose the matter at rest." (p. 209).

The effect of a sale under the Act of 1815, as to passing a good and legal title to the purchaser of unseated lands, despite alleged irregularities in the assessment, process or otherwise, is expressly given to sales of seated lands under the Act of 1915.

The purchaser in this case showed an assessment of the land,—a tax lawfully levied and assessed on the property by the proper officers, a return by the collector in strict compliance with the act, that such tax was unpaid and that sufficient personal property could not be found on the premises to pay such tax, the non-payment of such tax for two years after its assessment, a sale by the county treasurer, regularly conducted, and no redemption within two years thereafter. This was sufficient to pass him a good and legal title to the land: Stark v. Shupp, supra; Ellis v. Houseknecht, supra, p. 56.

The result works no injustice to the plaintiff. His testatrix became the owner of the tract in 1909. She never paid any taxes on it. It was sold for taxes in 1918 and no attempt was made to redeem it, or to recover the land until 1923, a few days before the five year limitation in the Act of 1804 would have barred the action. He is entitled to the legal remedy which the law allows to test the validity of the defendant's title, but to no other consideration.

The assignment of error is overruled and the judgment is affirmed.