## Summit Hill Borough.

*Constitutional law—Boroughs—Division into wards—Title of act— Amendment of act—Acts of May 14, 1874, P. L. 159, and March 24, 1877, P. L. 47.*

1. The Acts of May 14, 1874, P. L. 159, and March 24, 1877, P. L. 47, are constitutional, both acts are sufficient in title, and the act of March 24, 1877, does not offend against sec. 6 of art. III, of the constitution relating to the amendments of acts.

*Boroughs—Division into wards—Borough officers.*

2. The appellate court will not be astute in finding reasons for reversing a decree of quarter sessions reducing the number of wards of a borough, where it appears that such decree was reached and made with due care and a manifest desire to subserve the interest and convenience of the inhabitants of the borough in question.

3. In such a proceeding it is within the power of the court of quarter sessions to provide in its final decree for the election of new officers in accordance with the new subdivision of the territory of the borough, and if this shall result in some of the old borough officers finding themselves without an office, they are not in a position to complain.

Argued Dec. 12, 1911. Appeal, No. 209, Oct. T., 1911, by Andrew Breslin, from order of Q. S. Carbon Co., Oct. Term, 1910, No. 103, redividing borough into wards In re Division of Summit Hill Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Petition for redivision of borough into wards.

The opinion of the Superior Court states the case.

The court made the following order:

And now, September 12, 1911, the report of the commissioners appointed to inquire into the propriety of granting the prayer of freehold petitioners of the borough of Summit Hill, Carbon county, Pennsylvania, as to the redivision of said borough into wards having been duly filed in this court as also the supplemental reports amending plot submitted with said report and said report as amended having been confirmed absolutely, it is adjudged, ordered

and decreed, that the said borough of Summit Hill shall be divided into three wards in accordance with the boundaries described and set forth by the said commissioners in their report and the plot or draft as amended and annexed to said report, which said draft is made part of this decree. The wards shall be called respectively the first ward, second ward and third ward and shall each form and be called separate election districts.

The said first ward shall comprise that portion of said borough of Summit Hill lying west of a certain line beginning at a point on the northern boundary line of said borough and in line with Market street to center of Holland street, thence along Holland street south seventy-five degrees, etc.

The said second ward shall comprise all that portion of said borough included between said above-described eastern boundary line of the first ward and the line drawn through the center of Oak street in said borough of Summit Hill northwardly and southwardly to the northern and southern boundary lines of said borough respectively. . . .

The said third ward to comprise all that remaining portion of said borough east of the eastern boundary line of said second ward through Oak street described. . . .

The place for holding the elections in the said first ward shall be the Diligence Company's room in the Diligence Company's hose house.

The place for holding the elections in the said second ward shall be the storeroom of Annie Ichter, at corner of Market and Railroad streets.

The place for holding the elections in the said third ward shall be the carpenter shop of Moses G. Frantz on Pine street.

And further, it is ordered and decreed, that at the election to be held in and for said three wards on the Tuesday following the first Monday of November, 1911, the following officers shall be elected by the electors of said wards, to wit.

In the first ward: Two councilmen to serve for the term of two years to begin the first Monday of January, 1912, and one councilman to serve for the term of four years to begin the first Monday of January, 1912; one ward assessor to serve for the term of four years to begin the first Monday of January, 1912; one ward constable to serve for the term of four years to begin the first Monday of January, 1912; one judge of election and two inspectors of elections each to serve for two years beginning the first Monday of January, 1912, and thereafter vacancies as they shall arise or as the several terms of office shall expire shall be filled as provided by existing laws.

In the second ward: One councilman to serve for the term of two years to begin the first Monday of January, 1912, and two councilmen to serve for the term of four years to begin the first Monday of January, 1912; one ward assessor to serve for the term of four years to begin the first Monday of January, 1912; one ward constable to serve for the term of four years to begin the first Monday in January, 1912; one judge of elections and two inspectors of elections each to serve for two years beginning the first Monday in January, 1912, and thereafter vacancies as they shall arise or as the several terms of office shall expire be filled as provided by existing laws.

In the third ward: One councilman to serve for the term of two years to begin the first Monday of January, 1912, and two councilmen to serve for the term of four years to begin the first Monday of January, 1912; one ward assessor to serve for the term of four years to begin the first Monday in January, 1912; one ward constable to serve for the term of four years to begin the first Monday in January, 1912; one judge of elections and two inspectors of elections each to serve for two years beginning the first Monday in January, 1912, and thereafter vacancies as they shall arise or as the several terms of office shall expire shall be filled as provided by existing laws.

The following election officers are appointed to hold the election in the three wards of the borough of Summit Hill

as redivided at the coming municipal election, Tuesday following the first Monday of November, 1911, to wit.

In the first ward: William Womer, to serve as judge of elections; James I. McMichael, to serve as inspector of elections; Joseph O'Donnell, to serve as inspector of elections.

In the second ward: Edward James, to serve as judge of elections; Alexander Sadler, to serve as inspector of elections; Gilbert Miller, to serve as inspector of elections.

In the third ward: Richard Jones, to serve as judge of elections; Harry Kline, to serve as inspector of elections; Jonas Hamm to serve as inspector of elections.

*Error assigned* was the order of the court as above, quoting it.

*J. O. Ulrich*, with him *L. C. Scott*, for appellant.

*Daniel W. Sitler*, with him *N. M. Balliet*, for appellee.

OPINION BY MORRISON, J., May 13, 1912:

The petition upon which this proceeding is based, as furnished to us by appellant, is as follows: "December 20, 1910, Petition of thirty-three freeholders in the Borough of Summit Hill, praying the court to re-divide said Borough of Summit Hill into wards, by consolidating two or more wards or parts of two or more wards into one ward by erecting new wards out of parts of two or more adjoining wards, by dividing wards already erected into two or more wards, and by altering the lines of two or more adjoining wards, as may be found to best suit the convenience of the inhabitants thereof." We start with the assumption that the legislature has committed to the courts of quarter sessions the power to subdivide boroughs into wards and to alter and change the lines and numbers of such wards. We understand that the borough of Summit Hill was divided into four wards prior to the presentation of the

petition in the present case and that the proceedings carried to final decree in the court below resulted in abolishing one ward and subdividing the borough into three wards.

The acts of assembly under which this proceeding was carried on are the following: The Act of May 14, 1874, P. L. 159, entitled, "An act to prescribe the manner by which the courts may divide boroughs into wards." Section 1 of that act provides: "That the several courts of Quarter Sessions shall have authority, within their respective counties, to divide boroughs into wards, to erect new wards out of parts of two or more adjoining wards, to divide any ward already erected into two or more wards, to alter the lines of any two or more adjoining wards so as to suit the convenience of the inhabitants thereof, and to cause the lines or boundaries to be ascertained and established." The remaining sections of the act relate to the procedure.

The other Act is that of March 24, 1877, P. L. 47, entitled: "A supplement to an act, entitled 'an act to prescribe the manner by which the courts may divide boroughs into wards,' approved the fourteenth day of May Anno Domini eighteen hundred and seventy-four." The act reads: "That the several courts of Quarter Sessions shall have authority within their respective counties to divide boroughs into wards, by erecting two or more wards or parts of two or more wards into one ward so as to suit the convenience of the inhabitants thereof."

One of the leading questions raised by the appellant's learned counsel is the constitutionality of the above-cited acts of assembly of May 14, 1874, and March 24, 1877. We are unable to discover any merit in the contention that either of said acts is unconstitutional. The title of the act of 1874 gives clear and sufficient notice of the subject-matter of the act and this is so plain that we do not stop to cite authorities. The act of 1877 is surely germane to the subject of the former act and its title states clearly that it is a supplement to the act of May 14,

1874, and when the title of the act of 1877 is read it at once refers the reader to the act of May 14, 1874. While it cannot be said that the question of the constitutionality of said acts, or either of them, was squarely raised or decided in Re Division of Gettysburg, 90 Pa. 355, yet both acts were referred to and recognized as valid, in the opinion of the Supreme Court. The act of 1877 does not offend against sec. 6 of art. III of the constitution. It is not an act to amend but is specifically a supplement to the former act and relates to the same subject: Com. ex rel. v. Taylor et al., 159 Pa. 451. The act of 1877 is germane to the subject of the act of 1874, and, therefore, the former act does not offend against any constitutional provision: Washington Borough v. McGeorge, 146 Pa. 248. "A title declaring an act to be a supplement to a former one is a sufficient statement of the subject-matter, if the legislation therein contained is germane to the subject-matter of the original act:" Millvale Borough v. Evergreen Ry. Co., 131 Pa. 1.

It seems quite late for the learned counsel for appellant to raise the question of the constitutionality of the acts of 1874 and 1877. So far as we are aware these acts have not been so questioned before and they have been recognized as valid laws ever since their passage.

The legislature having committed the subject-matter of this case to the courts of quarter sessions, the appellate court ought not to be astute in finding reasons for the reversal of a decree which relates to the practical government and management of a borough, where it appears that said decree was reached and made with due care and a manifest desire to subserve the interests and convenience of the inhabitants of the borough of Summit Hill.

We have given to the very numerous exceptions and assignments of error and the argument of the counsel for the appellant a careful examination and consideration and find ourselves unable to discover reversible error in the record. We cannot see that it is necessary or profitable to consider the numerous assignments of error seriatim.

We understand the appellant's counsel to contend that there is error in the court's decree ordering an election of a full quota of ward officers, and that this is in contravention of the rights of incumbents. If there be such conflict there is nothing in this record which will enable us to determine such questions. In a conflict between incumbents and aspirants to offices the remedy is, we think, quo warranto, and such questions cannot be determined on this appeal. Again, it does not appear that appellant is laying claim to a borough office and therefore he has no standing to raise that question. If it shall be found that the decree of the court has removed borough officers and provided for the election of others in their places, none of such officers are what is known as constitutional officers. It would seem to be impossible in this case to decree the election of councilmen in such a manner as not to interfere with the terms of those heretofore elected. In Com. ex rel. v. Taylor et al., 159 Pa. 451, Mr. Justice MITCHELL, speaking for the Supreme Court, said: "The Act of May 14, 1874, P. L. 159, by its 4th section directed: 'the election of an equal number of councilmen and school directors in each of the wards,' etc. This contemplated a separate election by each ward. Not only is that the natural meaning of the language used, but it is what is generally to be presumed, in accordance with the universal American system that the representative shall be elected by the constituency which he is to represent, and therefore if he is, under the law, to be a ward representative in the school board of the borough, he is presumably to be elected by the voters of the ward."

In Com. ex rel. v. Weir, 165 Pa. 284, it was said by the Supreme Court: "It was never intended to put offices created by the legislature beyond the control and regulation of the creating power. It was not intended to ordain that an office for a term of years, once made, should not be modified, or abolished, while the term remained unexpired." In Lloyd v. Smith et al., 176 Pa. 213, it was said by the Supreme Court: "The right to an office is not

the right of the incumbent to a place, but of the people to the officer."

The proceedings in the court below having resulted in the reduction of the four wards of the borough to three wards we think it was within the power of the court to provide in the final decree for the election of new borough officers in accordance with the subdivision of the territory of the borough, and if this shall result in some of the old borough officers finding themselves without an office they are not in a position to complain, in this case.

The argument of this case was heard by a full bench and on consultation we all agreed that the decree ought to be affirmed.

The assignments of error are all dismissed, and the decree is affirmed at the cost of the appellant, Andrew Breslin.